IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VICTOR BRANNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:12-cv-00827 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN W. COLVIN, ) | Magistrate Judge Brown |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Victor Brannon's Motion for Judgment on the Administrative Record. (Doc. No. 18.) Magistrate Judge Brown issued a Report and Recommendation ("Report") recommending that Brannon's Motion be denied and the Commissioner's decision affirmed. (Doc. No. 28 at 25.) Brannon filed Objections to the Report on May 12, 2014. (Doc. No. 30.) On August 26, 2014, Brannon filed "New and Material" Evidence in Support of his Request for Remand, a subsequent determination by Administrative Law Judge ("ALJ") Scott C. Shimer that Brannon is disabled under the Social Security Act. (Doc. No. 32.) The Commissioner did not respond. For the reasons stated below, the Magistrate Judge's Report is **ADOPTED in part** and Brannon's Motion is **DENIED**.

I. STANDARD OF REVIEW[1]

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). However, Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g)

---

[1] The Court adopts the facts and procedural history as stated in Magistrate Judge Brown's Report. (Doc. No. 28 at 1–12.) The Court restates the facts and procedural history below only as necessary and relevant to the resolution of the issues.

1

(2012). Therefore, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions than the ALJ as to the plaintiff's claim on the merits, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## II. BRANNON'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Brannon objects to Magistrate Judge Brown's Report for the following reasons: (1) he is entitled to remand under Sentence Six for the consideration of a subsequent, favorable disability determination; (2) the ALJ erred by not giving controlling weight to the Global Assessment of Functioning ("GAF") scores found in treating physician Kamisha English's records; (3) the ALJ

did not properly evaluate the functional limitations imposed by Brannon's substance abuse disorder; and (4) the Commissioner failed to carry her burden of proving Brannon could perform jobs that exist in significant numbers in the national economy. The Court addresses each objection in turn.

### *1. Sentence Six Remand*

In his Motion for Judgment, Brannon contended he has an intellectual disability under Listing 12.05(C) but did not present certain school records or IQ tests evidencing this disability to ALJ Donald E. Garrison, so his case should be remanded for the consideration of this evidence. Magistrate Judge Brown found remand is proper only to address new evidence, but the records at issue are not new because they existed long before ALJ Garrison held his hearing. Furthermore, Magistrate Judge Brown found Brannon did not show good cause for failing to present the records to ALJ Garrison. In his Objections to Magistrate Judge Brown's Report, Brannon did not contest the Magistrate Judge's findings. However, in a subsequently issued Decision, ALJ Shimer determined Brannon had an intellectual disability under Listing 12.05(C) based in part on consideration of the school records and IQ tests at issue here. Brannon now seeks remand for consideration of ALJ Shimer's Decision.

Sentence Six of 42 U.S.C. § 405(g) permits this Court to remand a case to the Commissioner for the consideration of additional evidence if the plaintiff demonstrates "(i) that the evidence at issue is both 'new' and 'material,' and (ii) that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). Under the statute,

> evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Such evidence is "material" only if there

3

is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal citations omitted).

Brannon is not entitled to remand under Sentence Six for consideration of ALJ Shimer's decision. Although Sentence Six remand may be warranted to consider the evidence underlying a subsequent ALJ's Decision, the Decision itself "does not constitute new and material evidence under § 405(g)." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009). Thus the Court addresses only the Magistrate Judge's findings as to Brannon's school records and IQ tests.

The Court concurs with Magistrate Judge Brown that Sentence Six remand is inappropriate as to the school records and IQ tests because Brannon has failed to show good cause. With the exception of an IQ test administered in 2011, the evidence at issue existed before ALJ Garrison wrote his Decision. (*See* Doc. No. 32 at 3.) To justify his failure to submit the existent records to the ALJ, Brannon explains his non-attorney representative "was not up to the task of obtaining and submitting all relevant evidence." (Doc. No. 19 at 28–29.) As Magistrate Judge Brown found, this "falls well short" of good cause. (Doc. No. 28 at 25.) The fact that a claimant or her representative forgot to acquire necessary evidence is not, in itself, good cause. After all, if the reverse were true, the requirement would be meaningless because every such error would constitute good cause. It does not. *See, e.g., Hollon ex rel. Hollon*, 447 F.3d at 485.

As to the 2011 IQ test, the Court finds this evidence is not material because it is duplicative of an IQ test result already in the record. Listing 12.05(C) requires claimants to submit an IQ score of 60 through 70, among other things. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). As Brannon admits, ALJ Garrison considered Brannon's 1995 test result showing Brannon had an IQ of 59, thus Brannon had already met this element of the listing. (*See* Doc. No.

4

32 at 3.) Brannon's 2011 IQ score was 65. (Doc. No. 32-1 at 7.) Brannon has not demonstrated "a reasonable probability that the Secretary would have reached a different disposition of the disability claim" if presented with the additional IQ test result. *Foster*, 279 F.3d at 357.

Accordingly, Brannon's request for Sentence Six remand is **DENIED** and, for the reasons stated above, the Magistrate Judge's Report on this issue is **ADOPTED**.

## 2. *GAF Scores*

Magistrate Judge Brown found the GAF scores in psychiatrist Kamisha English's treatment notes were not entitled to controlling weight because they were determined by a social worker, not Dr. English. Moreover, the ALJ was not required to consider GAF scores at all, so any failure to explain the weight accorded such scores was, at worst, harmless error. Brannon contests both findings.

The ALJ is required to give treating source[2] "opinions" "controlling weight" if the following conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013) (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If the ALJ discounts a treating source opinion, he must give "good reasons" for doing so that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376. (internal citations omitted). A failure to give "good reasons . . .

---

[2] Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." Although Brannon visited Centerstone, Dr. English's practice group, repeatedly in 2008 through 2010, only a handful of Brannon's treatment notes are signed by Dr. English. (*See* Tr. 317, 341, 360, 421, 427, 440.) However, the parties agree that Dr. English is a treating source, thus the Court assumes she is for the purposes of this analysis. (*See* Doc. Nos. 30 at 14; 24 at 14.)

denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and, unless the failure is harmless error, requires remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). Upon review of the record, the Court agrees with the Magistrate Judge's determination that the ALJ's reasons for not giving weight to the GAF scores were good reasons supported by substantial evidence.

First, as noted by Magistrate Judge Brown, the record indicates that the GAF score assessment was completed by Monica Gretter, LCSW. (Doc. No. 28 at 17–18.) Social workers are "other sources" and their opinions are not entitled to controlling weight or subject to the good reasons requirement. 20 C.F.R. § 404.1513(d)(1); *Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies*, Soc. Sec. Ruling 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006). Instead, other source opinions "should be evaluated by using the applicable factors," including "[h]ow consistent the opinion is with other evidence," "[t]he degree to which the source presents relevant evidence to support an opinion;" and "[h]ow well the source explains the opinion." 2006 WL 2329939, at *4; *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939 at *6; *see Cruse*, 502 F.3d at 541.

Here, the ALJ declined to give any weight to the GAF scores because (1) he found the GAF assessments were likely inaccurate because all "were made at intake, when the claimant

6

was in an essentially untreated state, or . . . when there was no record that he was being actively treated"; (2) "there is no evidence in the record that would show that the claimant would continue to have such limitations if he complied with medical advice and treatment"; and (3) the GAF scores were not "well supported by medically acceptable clinical and laboratory diagnostic techniques." (Tr. 76.)[3] Accordingly, the Court finds the ALJ evaluated the GAF scores as other source opinions pursuant to the requirements of 20 C.F.R. § 404.1513(d)(1) and Social Security Ruling 06-03P.

Second, even if, as Brannon urges, the scores were "adopted" by Dr. English (Doc. No. 30 at 17), the ALJ was not required to give them controlling weight. As Magistrate Judge Brown noted, ALJs are not required to consider GAF scores at all. (Doc. No. 28 at 19 (quoting *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013).) The GAF scale "does not have a direct correlation to the [paragraph B criteria] in [the Social Security Administration's ("SSA")] mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,765–65 (Aug. 21, 2000); *accord Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (noting that "according to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning"). In fact, although not in effect at the time of the ALJ's determination, the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders eliminates the GAF scoring system. In an administrative message, the SSA explained: "The problem with using the GAF to evaluate disability is that there is no way to standardize measurement and evaluation. Some clinicians give inflated or unrealistically low GAF ratings because the GAF rating instructions in the DSM-IV-TR are unclear . . . [this] can lead to improper assessment of impairment severity." Soc. Sec. Admin., *Global Assessment of*

---

[3] The administrative record is available electronically at Docket Number 10.

*Functioning (GAF) Evidence in Disability Adjudication*, AM-13066 REV (Oct. 14, 2014). "Unless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to little weight under [the SSA's] rules." *Id.*

Contrary to Brannon's position, then, even if Dr. English adopted Gretter's GAF assessment, the ALJ was not required to adopt these GAF scores as proof of Brannon's level of residual functional capacity or give them controlling weight. Furthermore, the ALJ provided three good reasons supported by substantial evidence in the record for discounting the scores. As explained by the ALJ and Magistrate Judge Brown, the GAF assessment was conducted at intake, before Brannon had been under treatment, and is inconsistent with later records indicating Brannon improved when he complied with his treatment regimen. Furthermore, Gretter's justifications for the GAF assessment are sparse, and it is unclear from the assessment and intake notes how much of the assessment is based on Brannon's reported symptoms and how much is based on Gretter's observations. (Tr. 334–36; 364–72.)

The ALJ's decision not to give controlling weight to the GAF assessment is supported by substantial evidence in the record. For the reasons stated above, the Magistrate Judge's Report on this point is **ADOPTED** and Brannon's Motion **DENIED**.

### 3. *Substance Abuse*

Brannon contends that Magistrate Judge Brown erred in finding the ALJ properly evaluated Brannon's impairments in light of his history of substance abuse. In evaluating claims by individuals with a history of substance abuse disorders, the ALJ must first determine whether the claimant is disabled, taking into account all of the claimant's limitations and "without first attempting to separate limitations solely attributable to [substance] abuse." *Gayheart*, 710 F.3d at 381. If the ALJ determines the claimant is disabled, he next must consider whether the

claimant's substance abuse is a contributing material factor to his disability, or whether his "physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(2); *Gayheart*, 710 F.3d at 380. Brannon argues the ALJ inappropriately separated limitations caused by his substance abuse in determining his residual functional capacity ("RFC"), instead of first finding him disabled and then assessing whether his limitations would change if he stopped using drugs and alcohol. (Doc. No. 30 at 17.)

Upon review of the Decision, the Court concurs with Magistrate Judge Brown that the ALJ properly addressed Brannon's history of substance abuse. Contrary to Brannon's assertions, the ALJ addressed Brannon's substance abuse as part of his credibility determination, not in order to downplay Brannon's limitations. ALJs are entitled to make credibility determinations, and these determinations, if supported by substantial evidence, are treated with deference by a reviewing court. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

> Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized.

*Rogers*, 486 F.3d at 247 (quoting *Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, Soc. Sec. Ruling 96-7P, 1996 WL 374186, at *2 (July 2, 1996)).

The ALJ determined, upon consideration of the record, that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above [RFC]." (Tr. 69.) The ALJ proceeded to thoroughly examine Brannon's medical records and testimony to explain the basis for this

9

adverse credibility determination. For instance, in describing Brannon's seizure disorder, the ALJ noted Brannon reported to the emergency room multiple times for seizures, but was never admitted, was "expressly instructed not to continue using the emergency room," and had a history of non-compliance with his medication regimen. (Tr. 69–70.) Furthermore, the ALJ noted there were no medical source statements in the record relating to Brannon's physical impairments, and that the non-examining medical consultants opined that Brannon had "no exertional limitations." (Tr. 70.)

The ALJ performed a similar analysis of Brannon's mental impairments. The ALJ noted that Brannon's mental health treatment records were slim because he rarely honored appointments, and that his veracity in these appointments was doubtful because he denied "recent use of cocaine or alcohol" in his Centerstone intake interview, but other medical records showed he had recently reported to the emergency room with symptoms "consistent with someone experiencing alcohol withdrawal." (Tr. 73.) Brannon's records also indicated he failed to take medications prescribed for his mental disorders and went long intervals without treatment. (Tr. 74–75.) The ALJ also detailed consultative evaluation reports indicating Brannon was malingering and intentionally uncooperative with examiners. (Tr. 76–81.) In addition to these reasons for his adverse credibility finding, the ALJ described evidence indicating Brannon lied in his hearing testimony. At the 2010 hearing before ALJ Garrison, Brannon testified he was "free" of "illegal substances . . . between January of 2010 and the date of the hearing," but upon review of the record the ALJ determined this was "plainly and demonstrably *false*" because subsequent treatment records showed he admitted to smoking marijuana "the *very week of the hearing.*" (Tr. 72 (emphasis in the original).) The ALJ later explained "these and other examples serve to undermine any confidence a finder of fact would have with respect to the claimant's

statements, sworn or otherwise, relating to the nature and extent of the claimant's substance use disorders." (*Id.*)

The ALJ may not discredit a claimant's testimony simply because the claimant has a history of substance abuse. *See Williams v. Barnhart*, 338 F. Supp. 2d 849, 864 (M.D. Tenn. 2004). However, in assessing a claimant's credibility as part of the RFC assessment, the ALJ may consider evidence of dishonesty and other inconsistencies in the record in assessing the claimant's credibility, even if such evidence relates to a substance abuse disorder. Here, the ALJ properly relied on record evidence, including examiner reports of malingering, as well as inconsistencies in Brannon's testimony and statements to his own treating sources, to discredit Brannon's subjective complaints. Notably, Brannon does not contend the adverse credibility assessment is not supported by substantial evidence (*see* Doc. No. 30), and upon review of the record, the Court finds that it is.

The ALJ properly evaluated Brannon's residual functional capacity in light of his substance abuse disorder, and his adverse credibility determination was supported by substantial evidence. Therefore, the Magistrate Judge's conclusion on this point is **ADOPTED in part** and Brannon's Motion is **DENIED**.

### 4. *Vocational Expert*

Brannon contends Magistrate Judge Brown erred in determining the Commissioner proved Brannon could perform jobs that exist in significant numbers in the national economy. Specifically, Vocational Expert ("VE") Gordon Doss relied on the Dictionary of Occupational Titles ("DOT") to determine that Brannon could work as an office helper, house-sitter, or a courier. However, Brannon contends that two of these jobs are foreclosed because, according to the ALJ's RFC assessment, he cannot drive or be exposed to moving machinery. Furthermore,

office helper and house-sitter are outdated occupational descriptions that no longer exist in the DOT's successor database, the Occupational Information Network ("O*NET").

Where, as here, the claimant makes out a prima facie case of entitlement to Social Security benefits by establishing she cannot perform her past relevant work, "[t]he burden then shifts to the Secretary to show that claimant, considering her age, education, and work experience, can perform other work existing in significant numbers in the national economy." *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *see* 20 C.F.R. § 404.1566(b). The ALJ considers factors such as "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance the claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work and so on" in determining whether the jobs the claimant can perform exist in sufficient numbers. *Harmon*, 168 F.3d at 292. In making this determination, the ALJ is entitled to rely on the testimony of a vocational expert, but the ALJ's conclusion must be based on substantial evidence. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003); *see* 20 C.F.R. § 404.1566(d).

If the VE's testimony is not reliable, an ALJ's conclusion based on that testimony may not be supported by substantial evidence. *See Harmon*, 168 F.3d at 292. A VE's testimony may be unreliable if it is based on outdated occupational information. Although "the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted." *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (finding more current descriptions

existed on O*NET). However, O*NET indicates that both couriers and office helpers continue to exist in today's economy.

Furthermore, upon review of the O*NET job descriptions for courier and office helper, the Court concurs with Magistrate Judge Brown's assessment that "none of these positions actually require driving," which is "merely one of many duties that might be included in a particular job description." (Doc. No. 28 at 14.) A courier, for instance, could also perform his duties by walking or using public transportation. O*NET Online, *Summary Report for: 43-5021.00—Couriers and Messengers*, http://www.onetonline.org/link/summary/43-5021.00. Only one of the twenty-one potential tasks of an office clerk, delivering messages and running errands, might require driving. O*NET Online, *Summary Report for: 43-9061.00—Office Clerks, General*, http://www.onetonline.org/link/summary/43-9061.00. Accordingly, even the updated job descriptions Brannon cites do not prove he cannot perform these jobs.

However, even if Brannon is correct and he cannot work as a house-sitter, office helper, or courier, he is not entitled to remand because the ALJ's determination is still supported by substantial evidence. At the hearing, the VE testified that Brannon could work as a kitchen helper, of whom there are 4,209 in the state of Tennessee and "more than 250,000 nationwide," or a stock clerk, a job that exists in "significant" number in the national economy. (Tr. 26–27.) The Court finds that there are sufficient numbers of kitchen helper positions alone in the local and national economy. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006) (finding as few as "870 jobs can constitute a significant number in the geographic region"); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding "proof of more than 1350 jobs in the local economy which [claimant] could perform despite his reduced capacity

13

established the existence of work in significant numbers"). Notably, Brannon does not contest that these jobs exist in sufficient numbers, nor does he argue that he cannot perform them.

The Court finds the ALJ's determination that Brannon can perform other work existing in significant numbers in the national economy is supported by substantial evidence. Accordingly, the Magistrate Judge's Report as to this point is **ADOPTED in part** and Brannon's Motion is **DENIED**.

### III. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report **in part** (Doc. No. 28) and **DENIES** Brannon's Motion (Doc. No. 18). All other pending motions in this matter are hereby **TERMINATED as MOOT** and the Clerk of the Court is directed to **CLOSE** the case.

It is so ORDERED.

Entered this the 17th day of July, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT